FEDERAL COMMUNICATIONS COMMISSION *v.*
NATIONAL BROADCASTING CO., INC. (KOA)
ET AL.

No. 585.   Argued April 8, 9, 1943.—Decided May 17, 1943.

*Mr. Paul A. Freund,* with whom *Solicitor General Fahy*
and *Mr. Harry M. Plotkin* were on the brief, for petitioner.

*Mr. Philip J. Hennessey, Jr.,* with whom *Messrs. Karl A.
Smith* and *A. L. Ashby* were on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case presents important questions of procedure arising under Title III of the Communications Act of 1934.[1]

The respondent is licensed to operate station KOA at Denver, Colorado, on a frequency of 850 kilocycles. Station WHDH, of Boston, Massachusetts, had a license to operate, daytime only, on the same frequency. October 25, 1938, WHDH applied to the Communications Commission for an increase in power and for operation unlimited in time. The Commission set down the application and designated certain issues for hearing, of which the following are pertinent: To determine whether the interests of any other stations may be adversely affected by reason of interference, particularly KOA and other named stations; to determine whether public interest, convenience or necessity would be served by modifying the rules governing standard broadcast stations to authorize the proposed operation of WHDH.

The Commission's rules precluded the operation of a second station at night on KOA's frequency;[2] provided that an application not filed in accordance with its regulations would be deemed defective, would not be considered, and would be returned to the applicant;[3] and also that if an applicant desired to challenge the validity or wisdom of any rule or regulation he must submit a petition setting forth the desired change and the reasons in support thereof.[4]

The respondent petitioned to intervene. Its petition was denied. It then moved to dismiss WHDH's applica-

---

[1] Act of June 19, 1934, c. 652, 48 Stat. 1064, 1081; 47 U. S. C. § 301 ff.
[2] §§ 3.22 and 3.25.
[3] § 1.72.
[4] § 1.71.

tion for failure to conform to the rules and regulations. The motion was denied. Meantime the Commission evidently believing that, in view of the possible alteration of the rules concerning standard broadcast stations, questions of policy might be involved and that, consequently, under § 409 (a), the hearing would have to be conducted by a member of the Commission,[5] designated Commissioner Case to conduct the hearing.

No hearing was held under the original notice. A new notice was issued which indicated that the Commission did not then contemplate modification of its substantive rules but intended merely to afford the applicant an opportunity to urge that they be construed in the applicant's favor. Issues specified in the second notice were "to determine whether or not the Commission's Rules Governing Standard Broadcast Stations, particularly Sections 3.22 and 3.25 (Part III) properly interpreted and applied preclude the granting of the application" and to determine the nature, extent, and effect of any interference which would result from a grant of the application, particularly with station KOA and others named. The inquiry thus limited could be heard before an examiner under § 409 (a) and, accordingly, the Commission withdrew the designation of Commissioner Case and assigned an examiner.

A hearing was held January 29 and 30, 1940, but the respondent was not permitted to appear or participate. December 9, 1940, the Commission promulgated proposed findings of fact and conclusions. Two commissioners dissented. All agreed that §§ 3.22 and 3.25 of the regulations precluded a grant of WHDH's application. Three voted to modify those regulations and to grant the

---

[5] Sec. 409 (a), 47 U. S. C. § 409 (a) provides that, in the administration of Tit. III, an examiner may not hold hearings with respect to a matter involving a change of policy by the Commission or a new kind of use of frequencies.

application. Respondent then filed its second petition to intervene, which was denied. The Commission subsequently, on its own motion, permitted respondent to file briefs and present an oral argument *amicus curiae*. April 7, 1941, the Commission adopted a final order amending § 3.25 of the rules and granting the WHDH application, two commissioners dissenting.

Respondent filed a petition for rehearing pursuant to § 405 of the Act.[6] This was denied. Thereupon respondent gave notice of appeal to the Court of Appeals for the District of Columbia,[7] which concluded that the Commission's action effected a modification of respondent's license and consequently the statute entitled the respondent to be made a party and to participate in the hearing. The court below therefore reversed the Commission's order and remanded the case for further proceedings.[8]

The respondent contends that it was entitled, as a matter of right, to participate in the hearing before the Commission on the question of the granting of WHDH's application and that its rights in this respect were not satisfied by permitting it to file a brief and present argument. It further insists that the Commission's proceeding was invalid due to the provisions of § 409 (a) of the statute, the failure to comply with the rules then in force, and the arbitrary and capricious action taken. Finally, the respondent asserts § 405 entitled it to a rehearing and § 402 (b) (2) granted it an appeal.

The petitioner urges that the grant of WHDH's application did not amount to a substantial modification of KOA's license or so affect KOA's rights as to require that KOA be permitted to intervene, and that, in any event, KOA was not denied any substantial right of participation in the proceeding.

---

[6] 47 U. S. C. § 405.

[7] Pursuant to § 402 (b) (2); 47 U. S. C. § 402 (b) (2).

[8] 132 F. 2d 545.

*First.* We are of opinion that respondent was entitled to be made a party.

Section 312 (b) of the Act provides:

"Any station license hereafter granted . . . may be modified by the Commission . . ., if in the judgment of the Commission such action will promote the public interest, convenience, and necessity . . . *Provided, however,* That no such order of modification shall become final until the holder of such outstanding license . . . shall have been notified in writing of the proposed action and the grounds or reasons therefor and shall have been given reasonable opportunity to show cause why such an order of modification should not issue."

The Commission found that there would be interference with KOA's broadcast in the eastern part of the United States if WHDH's application were granted. The Commission's own reports to Congress show that at night a small proportion of the urban population and a much larger proportion of the rural population of the country enjoy only such broadcasting service as is afforded by clear channel stations. KOA, one of the stations upon which this service depends, has operated continuously at Denver since 1924 and has used a clear channel upon which only one station is permitted to operate during the night. Under the Commission's regulations (§§ 3.22 and 3.25) KOA had, therefore, little or no channel interference from any station located within the United States. In addition, its signals throughout the United States were free, and entitled to remain free, of channel interference from any station in Canada, Mexico or Cuba, pursuant to the provisions of the North American Regional Broadcasting Agreement.[9] The Commission's order deprives KOA of freedom from interference in its night service over a large area lying east of the Mississippi River. Furthermore, the order opens the way for Canada, Mexico, and Cuba,

---

[9] 55 Stat., Part 2, 1005.

signatories to the broadcasting agreement, to acquire the right to operate stations which may cause channel interference at night on KOA's frequency within the United States.

The respondent urges that it can be shown that the service of WHDH, while interfering at night with that of KOA, would not be a service equally useful, and that the grant to WHDH adds a new primary service to an area already heavily supplied with such service. In its petitions to intervene, the respondent called attention to the terms of its existing license, asserting that the grant of WHDH's application would cause interference in areas where KOA's signal was interference free; that respondent would be aggrieved and its interests adversely affected by a grant of the application and that the operation proposed by WHDH would not be in the interest of public convenience and necessity; that a grant of the application would result in a modification of respondent's license in violation of § 312 (b) and would result in a modification of the Commission's regulations without such a hearing as is required by § 303 (f) of the Act. In its petition for rehearing, the respondent elaborated and reiterated the reasons embodied in its motions for dismissal of the petition and in its petitions to intervene.

The Commission says that the section has no application to this case. It asserts that the proceeding was an application by WHDH for modification of its station license and that, under § 309 (a) of the Act, the Commission might have acted on the application without any hearing. So much may be conceded, if nothing more were involved. But the grant of WHDH's application, in the circumstances, necessarily involved the modification of KOA's outstanding license. This petitioner denies, saying KOA's license granted no more than the privilege of operating its station in a prescribed manner and that the grant of WHDH's application in nowise altered the terms

of KOA's license. This contention stems from the circumstance that KOA's license authorizes it to operate a transmitter of 50 kilowatts on the frequency 850 kilocycles at Denver. The petitioner says that the grant of WHDH's application affects none of these terms. But we think this too narrow a view. When KOA's license was granted the Commission's rules §§ 3.21 and 3.25 embodied these provisions:

"A 'clear channel' is one on which the dominant station or stations render service over wide areas and which are cleared of objectionable interference within their primary service areas and over all or a substantial portion of their secondary service areas."

"The frequencies in the following tabulation are designated as clear channels and assigned for use by the classes of stations are given:

"(a) To each of the channels below there will be assigned one class I station and there may be assigned one or more class II stations operating limited time or daytime only: . . . The power of the class I stations on these channels shall not be less than 50 kilowatts."

850 kilocycles was one of the frequencies appearing on the schedule forming part of the rule.

These rules were incorporated into the terms of KOA's license which granted it a frequency of 850 kilocycles and a power of 50 kilowatts. To alter the rules so as to deprive KOA of what had been assigned to it, and to grant an application which would create interference on the channel given it, was in fact and in substance to modify KOA's license. This being so, § 312 (b) requires that it be made a party to the proceeding. We can accord no other meaning to the language of the proviso which requires that the holder of the license which is to be modified must have notice in writing of the proposed action and the grounds therefor and must be given a reasonable

opportunity to show cause why an order of modification should not issue. Certainly one who is to be notified of a hearing and to have the right to show cause is not to be considered a stranger to the proceeding but is, by the very provisions of the statute, to be made a party. The very notices issued by the Commission show that that body knew there would probably be an interference with KOA's signals if the pending application of WHDH were granted; and that the Commission also realized there was a serious question whether the application could be granted under its existing rules. It is not necessary to discuss at any length the sufficiency of the petitions to intervene if, as we have held, the Act itself provided that, in such an instance as the present, KOA was entitled to be brought in as a party. A licensee cannot show cause unless it is afforded opportunity to participate in the hearing, to offer evidence, and to exercise the other rights of a party.

Much is said to the effect that KOA was not in fact injured, because the Commission permitted it to file a brief *amicus curiae* and to present oral argument. It is beside the point to discuss the Commission's rules as to intervention and the privileges accorded by the Commission to one denied intervention, since we are of opinion, as already stated, that, under the terms of the Act, the respondent was entitled to participate in the proceedings.

*Second.* While the Commission did not urge before the court below, and did not advance as a reason for the grant of certiorari, that respondent was not entitled to appeal to the Court of Appeals, this matter was argued here and, as it raises a question of jurisdiction, we shall consider it.

It would be anomalous if one entitled to be heard before the Commission should be denied the right of appeal from an order made without hearing. We think the Act does not preclude such an appeal. Section 402 (b) (2) permits an appeal to the Court of Appeals for the District of Co-

lumbia by "any . . . person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing" any application for modification of an existing station license. If, within the intent of the statute, the interests of KOA would be adversely affected, or if KOA would be aggrieved by granting the application of WHDH, then the statute grants KOA a right of appeal.

In *Federal Communications Commission* v. *Sanders Bros. Radio Station,* 309 U. S. 470, we dealt with a similar situation. There the question was whether a rival station, which would suffer economic injury by the grant of a license to another station, had standing to appeal under the terms of the Act. We held that it had. We pointed out that while a station license was not a property right, and while the Commission was not bound to give controlling weight to economic injury to an existing station consequent upon the issuance of a license to another station, yet economic injury gave the existing station standing to present questions of public interest and convenience by appeal from the order of the Commission. Here KOA, while not alleging economic injury, does allege that its license ought not to be modified because such action would cause electrical interference which would be detrimental to the public interest.

In view of the fact that § 312 (b) grants KOA the right to become a party to the proceedings, we think it plain that it is a party aggrieved, or a party whose interests will be adversely affected by the grant of WHDH's application, as indeed the Commission seems to have thought when it first noticed WHDH's application for hearing. We, therefore, hold KOA was entitled to appeal from the Commission's action in excluding it from participation in the proceeding and from the order made by the Commission.

The judgment is

*Affirmed.*

MR. JUSTICE BLACK, MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting:

Unlike courts, which are concerned primarily with the enforcement of private rights although public interests may thereby be implicated, administrative agencies are predominantly concerned with enforcing public rights although private interests may thereby be affected. To no small degree administrative agencies for the enforcement of public rights were established by Congress because more flexible and less traditional procedures were called for than those evolved by the courts. It is therefore essential to the vitality of the administrative process that the procedural powers given to these administrative agencies not be confined within the conventional modes by which business is done in courts.

In my judgment the decision of the Court in this case imposes a hampering restriction upon the functioning of the administrative process. This is the aspect that lends this case importance and leads me to express the reasons for my dissent.

The Communications Act of 1934, 48 Stat. 1064, 47 U. S. C. § 151 *et seq.*, directs the Federal Communications Commission to "classify radio stations," "prescribe the nature of the service to be rendered by each class of licensed stations and each station within any class," and "assign bands of frequencies to the various classes of stations, and assign frequencies for each individual station and determine the power which each station shall use and the time during which it may operate." § 303 (a) (b) (c). Accordingly, the Commission has established a plan for allocating the available radio facilities among the stations of the country. Under its Rules there are three classes of standard broadcast channels: "clear channels," on which domi-

nant stations render service over extensive areas and which are cleared of objectionable interference within their primary service areas and over all or a substantial part of their secondary service areas; "regional channels," on which several stations serving smaller areas operate simultaneously with powers not in excess of 5 kilowatts; and "local channels," on which many stations serving local areas operate simultaneously with powers not in excess of 250 watts. § 3.21. Similarly, standard broadcast stations are classified into four groups: "class I stations"—dominant stations operating on clear channels and designed to render primary and secondary service over large areas and at relatively long distances; "class II stations"—operating on clear channels and designed to render service over a primary service area which is limited by and subject to such interference as may be received from class I stations; "class III stations"—operating on regional channels and designed to render service primarily to metropolitan districts and the rural areas contiguous thereto; and "class IV stations"—operating on local channels and designed to render service primarily to cities or towns and the suburban and rural areas contiguous thereto. § 3.22. Section 3.25 divides clear channels into two further groups: I–A channels, to which only one class I station is assigned, with one or more class II stations operating limited time or daytime only, and I–B channels, to which both class I and class II stations may be assigned, with more than one station operating at night.

On October 25, 1938, Station WHDH in Boston, Massachusetts, a class II station licensed to operate during the daytime only on the frequency 830 kilocycles (a class I–A channel) with power of 1 kilowatt, applied to the Commission for modification of its license so that it could operate both night and day on that frequency with increased power of 5 kilowatts. At that time Station KOA in Denver, Colorado, was the dominant class I station

on the frequency 830 kilocycles, operating unlimited time with power of 50 kilowatts. Since the Commission's Rules provided for the assignment of only one station to operate at night on the frequency 830 kilocycles, the WHDH application could not be granted without amendment of § 3.25.

Section 309 (a) of the Act specifies the procedure which the Commission must follow in passing upon applications for modification of licenses, such as that of WHDH: "If upon examination of any application for . . . modification of a station license the Commission shall determine that public interest, convenience, or necessity would be served by the granting thereof, it shall authorize . . . modification thereof in accordance with said finding. In the event the Commission upon examination of any such application does not reach such decision with respect thereto, it shall notify the applicant thereof, shall fix and give notice of a time and place for hearing thereon, and shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe." The Commission, upon its examination of the WHDH application, was unable to find that a grant would serve the public interest, convenience, or necessity. The application was therefore, on September 2, 1939, designated for hearing. Three weeks later, on September 23, 1939, KOA filed a petition to intervene. Its petition, in substance, alleged only that the proposed operation of WHDH would "cause interference to station KOA in areas where KOA's signal is now interference free," that KOA "would be aggrieved and its interests adversely affected" by the proposed operation, and that a grant of the WHDH application would not be in the public interest, convenience, or necessity.

The Court holds that the Commission was required as a matter of law to grant KOA's petition to intervene in the hearing upon the WHDH application. In my judg-

ment the Act precludes such a construction. Section 4 (j) provides that the Commission "may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice"; § 303 (r) authorizes it to make "such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this Act." We have held that by force of these provisions "the subordinate questions of procedure in ascertaining the public interest, when the Commission's licensing authority is invoked—the scope of the inquiry, whether applications should be heard contemporaneously or successively, whether parties should be allowed to intervene in one another's proceedings, and similar questions—were explicitly and by implication left to the Commission's own devising, so long, of course, as it observes the basic requirements designed for the protection of private as well as public interest." *Federal Communications Comm'n* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 138.

The breadth of discretion entrusted to the Commission is limited, however, by §§ 303 (f) and 312 (b). The former provides that "changes in the frequencies, authorized power, or in the times of operation of any station, shall not be made without the consent of the station licensee unless, after a public hearing, the Commission shall determine that such changes will promote public convenience or interest or will serve public necessity, or the provisions of this Act will be more fully complied with." Section 312 (b) authorizes the Commission to modify outstanding station licenses "if in the judgment of the Commission such action will promote the public interest, convenience, and necessity, or the provisions of this Act or of any treaty ratified by the United States will be more fully complied with: *Provided, however,* That no such order of modification shall become final until the holder of such outstanding license or permit shall have been notified

in writing of the proposed action and the grounds or reasons therefor and shall have been given reasonable opportunity to show cause why such an order of modification should not issue."

The procedural scheme established by the statute is thus clear: if application is made for a station license, or for modification or renewal of a license, the Commission may grant such application without a hearing if it finds, upon examination of the application, that a grant would be in the public interest. If it is unable to reach such a determination from its study of the application, it must afford the applicant a "hearing." § 309 (a). If a Commission order involves a change in the frequency, authorized power, or hours of operation of an existing station without its consent, such licensee is entitled to a "public hearing." § 303 (f). If a Commission order involves "modification" of an outstanding license, presumably something other than a change in frequency, power, or hours of operation, the modification order cannot become effective until the licensee is given notice in writing and a "reasonable opportunity to show cause why such an order of modification should not issue." § 312 (b). It is relevant here, also, that under § 312 (a) a Commission order revoking a station license cannot take effect "until fifteen days' notice in writing thereof, stating the cause for the proposed revocation, has been given to the licensee. Such licensee may make written application to the Commission at any time within said fifteen days for a hearing upon such order, and upon the filing of such written application said order of revocation shall stand suspended until the conclusion of the hearing conducted under such rules as the Commission may prescribe. Upon the conclusion of said hearing the Commission may affirm, modify, or revoke said order of revocation." The Act explicitly provides for a "hearing," therefore, when the Commission proposes to deny an application for a license, or to revoke a license, or to

change the frequency, power, or hours of operation of a station licensee. But when a Commission order merely involves "modification" of the license of an existing station, the latter is entitled only to notice in writing and a "reasonable opportunity to show cause" why the order should not issue.

The Commission has exercised the authority given it by Congress to formulate its administrative procedure. Section 1.102 of its Rules, relating to intervention in Commission proceedings by interested parties, provides as follows:

"Petitions for intervention must set forth the grounds of the proposed intervention, the position and interest of the petitioner in the proceeding, the facts on which the petitioner bases his claim that his intervention will be in the public interest, and must be subscribed or verified in accordance with section 1.122. The granting of a petition to intervene shall have the effect of permitting intervention before the Commission but shall not be considered as any recognition of any legal or equitable right or interest in the proceeding. The granting of such petition shall not have the effect of changing or enlarging the issues which shall be those specified in the Commission's notice of hearing unless on motion the Commission shall amend the same."

Under an earlier rule any person could intervene in a Commission proceeding if his petition disclosed "a substantial interest in the subject matter." § 105.19, Commission's Rules and Regulations (1935). The reasons for the change in the Commission's intervention rule were thus stated by the Attorney General's Committee on Administrative Procedure, Sen. Doc. No. 186, 76th Cong., 3d Sess., Pt. 3, pp. 16–17: "The effects of this complete freedom of intervention [available under the old rule] upon the Commission's activities were very marked. Not only was the record unnecessarily prolonged by the discussion

of noncontroversial issues, but the evidence relevant to each issue was increased manyfold by virtue of the extended cross-examination of witnesses by each intervener. More often than not the interveners presented no affirmative evidence on the issues at hand. The major functions served by them were apparently to impede the progress of the hearing, to increase the size of the record, and to obfuscate the issues by prolonged and confusing cross-examination. Nor were these dilatory and destructive tactics restricted to the hearing itself. Each intervener would customarily avail himself of his rights to take exceptions to the examiner's report, to oral argument before the Commission, and, in many cases, to appeal from the Commission's order to the District of Columbia Court of Appeals. . . . If this [new] provision is enforced intelligently and forcefully, an important step will have been taken both toward the protection of applicants and the increase of the Commission's prestige." Compare In re Hazelwood, Inc., 7 F. C. C. 443.

KOA's petition for intervention was denied, presumably because the showing required by § 1.102 had not been made. And on January 29 and 30, 1940, a hearing upon the WHDH application was held before an examiner of the Commission. Although KOA was denied the right to intervene, it could, under § 1.195 of the Commission's Rules, have appeared and given evidence. That rule provides that the Secretary of the Commission shall maintain "a record of all communications received by the Commission relating to the merits of any application pending before the Commission," and if the application is designated for hearing, the Secretary must notify all persons who have communicated with the Commission regarding the application "in order that such persons will have an opportunity to appear and give evidence at such hearing." Under this rule if KOA had appeared at the hearing upon the WHDH application, it would have been entitled to

present evidence relating to the matters raised in its petition for intervention. But, so far as the record before us shows, it made no effort to take advantage of the right of participation afforded it by § 1.195.

On December 9, 1940, the Commission issued proposed findings and conclusions. Under these the Commission found that the proposed operation of WHDH, with use of a directional antenna, "would not cause any interference to the primary service of Station KOA, Denver, Colorado, and that such interference as the proposed operation of WHDH might reasonably be expected to cause to reception of KOA would be limited to receivers in the eastern half of the United States"; that the operation of WHDH as proposed in its application would "enable it to deliver service of primary signal quality to an area having a population of 3,093,000 or to 621,000 more people than are now included within the primary service area of the station"; that by extending WHDH's hours of operation "a new primary service to 94.9% of the Boston metropolitan area, including a population of 2,185,000," would be provided; that, in addition to the improved service to listeners in the Boston area, there would be "an improvement and extension of service which applicant station [WHDH] now endeavors to render over the fishing banks situated off the New England coast"; and that the public interest would be served by amending § 3.25 of the Rules so as to make the frequency 830 kilocycles a I-B channel, upon which more than one station could operate at night, thereby permitting "more efficient use of the frequency."

On December 16, 1940, KOA again petitioned to intervene. Its petition alleged only that the proposed action, if adopted, would result in "interference to Station KOA in areas where KOA's signals are now interference free," would constitute a modification of KOA's license without affording it an opportunity to be heard, and would result in

"a degradation of service on 830 kc which will be prejudicial to the priority rights in the United States on this channel, will discriminate against service to rural listeners in order to furnish additional service to the City of Boston which is already well served." KOA made no offer to contradict or add to the evidence adduced at the hearing, nor did it dispute the Commission's conclusions as to the extent of the interference which KOA would suffer from the proposed operation of WHDH. Accordingly, on January 7, 1941, the Commission denied KOA's second petition to intervene, but it permitted KOA, as well as other "clear channel" stations interested in the proceeding, to participate in the oral argument before the Commission, and to file briefs *amicus,* in order to determine whether the proposed findings should be made final.

Meanwhile, on January 23, 1941, the President proclaimed the North American Regional Broadcasting Agreement, 55 Stat. 1005. The purpose of this Agreement, which was concluded at Havana on December 13, 1937, among Canada, Cuba, Dominican Republic, Haiti, Mexico, and the United States, was to "regulate and establish principles covering the use of the standard broadcast band in the North American Region so that each country may make the most effective use thereof with the minimum technical interference between broadcast stations." The signatory Governments recognized that "until technical developments reach a state permitting the elimination of radio interference of international character, a regional arrangement between them is necessary in order to promote standardization and to minimize interference." The Agreement established priorities in the use of specified clear channels, sixty-three of which were assigned to the United States, and provided that each such channel "shall be used in a manner conforming to the best engineering practice with due regard to the

service to be rendered by the dominant stations operating thereon."

In order to carry out the provisions of the Agreement, the United States was obliged to make extensive adjustments in the assignments of its existing stations. As part of the accommodations required, stations assigned to the frequency 830 kilocycles were to be moved to 850 kilocycles. This change affected both WHDH and KOA. The license of KOA, like that of all other standard broadcast stations, would have expired on August 1, 1940, while the WHDH application was pending. The licenses of all stations, including KOA and WHDH, were successively extended by the Commission, first to October 1, 1940, and then to March 29, 1941, the effective date of the Agreement. KOA had filed an application for renewal of its license to operate on 830 kilocycles, 50 kilowatts, unlimited time. On February 4, 1941, the Commission advised all applicants for renewals, including KOA, that under the Agreement, their operating assignments were to be changed and that their applications for renewals would be regarded as applications to operate upon the new frequencies, unless the applicant wished to operate upon some other frequency, in which event its application would be designated for hearing. So far as appears, KOA did not notify the Commission that it had any objection to its renewal application being regarded as an application to operate on the frequency 850 kilocycles. Accordingly, when its license to operate on 830 kilocycles expired on March 29, 1941, its license was renewed on the frequency 850 kilocycles. In no sense, therefore, did the action of the Commission changing KOA's frequency assignment pursuant to the North American Regional Broadcasting Agreement constitute a modification of KOA's license. And, indeed, KOA makes no such contention here, for review of Commission orders modifying station licenses,

upon the Commission's own motion, can be reviewed only in a suit brought in a district court under § 402 (a). See *Scripps-Howard Radio* v. *Federal Communications Comm'n,* 316 U. S. 4, 8–9, note 3.

On March 26, 1941, three days before the Agreement was to become effective, the Commission issued an order adopting the proposed findings and conclusions upon the WHDH application, granting WHDH authority to operate on 850 kilocycles, with power of 5 kilowatts, day and night, and amending § 3.25 of its Rules so as to make the frequency 850 kilocycles a I–B channel upon which more than one station could operate at night. This order was made effective April 7, 1941.

On April 25, 1941, KOA filed a petition for rehearing before the Commission, repeating in substance the allegations contained in its earlier petitions to intervene. And on May 20, 1941, the Commission, in an opinion that considered in detail each of the allegations in the petition for rehearing, denied the petition. The Commission stated that "in view of the importance of the matters involved in this proceeding, we shall re-examine our findings and conclusions and the record upon which they are based." In summary, it found that a grant of the WHDH application "would not result in interference to the primary service of Station KOA, Denver, Colorado, and that such interference to the reception of Station KOA as might reasonably be expected to result from a grant of the Matheson [WHDH] application would occur in its secondary service area and would be limited to receivers in the eastern half of the United States, remote from the KOA transmitter; that such secondary service as KOA could render in this area would be of uncertain character because of its dependence upon the characteristics of the individual receiver, the signal intensity and the signal to interference ratio involved in each individual case"; and "that although petitioner [KOA] contends it is entitled to serve the rural

areas in which it is claimed interference will occur, it fails to allege either that it has been providing a useful service in such areas or point out, in terms of population, the nature and extent of the claimed interference."

On June 7, 1941, KOA filed an appeal from the Commission's order in the Court of Appeals for the District of Columbia under § 402 (b) (2) of the Communications Act of 1934. Section 402 (b) provides for appeals to the Court from decisions of the Commission "in any of the following cases: (1) By any applicant for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, whose application is refused by the Commission. (2) By any other person aggrieved or whose interests are adversely affected by any decision of the Commission granting or refusing any such application."

The court below could not take jurisdiction of the suit unless KOA had a right to appeal under § 402 (b) (2); in other words, unless it was "aggrieved" or its "interests were adversely affected" by the granting of the WHDH application. Since the Commission in exercising its licensing function must be governed by the public interest and not the private interest of existing licensees, an appellant under § 402 (b) (2) appears only to vindicate the public interest and not his own. *Federal Communications Comm'n* v. *Sanders Radio Station,* 309 U. S. 470; *Scripps-Howard Radio* v. *Federal Communications Comm'n,* 316 U. S. 4. That the Commission's order may impair the value of an existing station's license is in itself no ground for invalidating the order; it merely may create standing to attack the validity of the order on other grounds. Whatever doubts may have existed as to whether the ingredients of "case" or "controversy," as defined, for example, in *Muskrat* v. *United States,* 219 U. S. 346, are present in this situation were dispelled by our ruling in the *Sanders*

case that the legality of a Commission order can be challenged by one "aggrieved" or "whose interests are adversely affected" thereby, even though the source of his grievance is not what is claimed to make the order unlawful. But from this it must not be concluded that anyone who claims to be "aggrieved" or who is in any way adversely affected by Commission action has a right to appeal. As the prevailing opinion in the Court of Appeals pointed out: "In the present stage of radio, very few changes, either in frequency or in power, can be made without creating some degree of electrical interference. This may range from minute and practically harmless interruption with remote and very occasional listeners in secondary service areas to total obliteration in the primary field. . . . It seems not unreasonable to read the [*Sanders*] opinion as requiring by implication that there be probable injury of a substantial character. So much by way of limitation seems necessary to prevent vindication of the public interest from turning into mass appeals by the industry at large, with resulting hopeless clogging of the administrative process by judicial review. Likewise, with electrical interference, it is hardly necessary to secure appellate championship by every broadcaster who may be affected in only a remote and insubstantial manner." 132 F. 2d 545, 548.

In order to establish its right to appeal, therefore, KOA had to make a showing that its interests were substantially impaired by a grant of the WHDH application. This, the record makes clear, it failed to do. In its notice of appeal to the court below, KOA made only a general allegation, what courts normally regard as a conclusion of law, that the Commission's action resulted in a "substantial modification" of its license. No supporting allegations of fact were tendered. There was no claim that KOA's economic position was in any way impaired, or that the proposed operation of WHDH would cause substan-

tial interference with KOA, or that such operation would result in a substantial loss of listeners to KOA, or that any areas of substantial size would no longer be able to receive satisfactory service from KOA. Neither in its petitions for intervention, nor in its petition for rehearing before the Commission, nor in its notice of appeal to the court below, did KOA specifically challenge the correctness of the Commission's findings.

The record affords no basis, therefore, for finding that KOA had standing to appeal from the grant of the WHDH application. But even if it had, I do not believe that KOA was afforded less opportunity to participate in the proceedings before the Commission than the statute requires. Assuming that the grant of the WHDH application constituted a "modification" of KOA's license in the sense that the scope of the operations authorized by KOA's license was thereby limited, only § 312 (b) would come into operation. Section 303 (f) is inapplicable because the grant of the WHDH application unquestionably did not change KOA's frequency, power, or hours of operation. Both before and after the Commission's action, KOA's operating assignment was precisely the same: 850 kilocycles, 50 kilowatts, unlimited time. And so the only question on this phase of the case is—was KOA afforded such opportunity of participation in the WHDH proceeding as § 312 (b) requires? That section provides that no order modifying the license of any existing station "shall become final until the holder of such outstanding license or permit shall have been notified in writing of the proposed action and the grounds or reasons therefor and shall have been given reasonable opportunity to show cause why such an order of modification should not issue."

KOA does not claim that it did not have sufficient notice, formal and otherwise, of the proceedings upon the

WHDH application. Nor can there be any doubt that it had ample and "reasonable opportunity to show cause" why WHDH's application should not be granted. Under § 1.195 of the Commission's Rules it could have appeared and given evidence at the hearing upon the WHDH application. That it did not take advantage of such an opportunity is certainly no reason for saying that it had none. KOA was permitted to argue before the Commission that the proposed grant of the WHDH application should not be made final. It submitted a petition for rehearing which the Commission considered on its merits and which the Commission denied only after a detailed review of all the contentions made by KOA.

The Court holds, nevertheless, that the Commission was required to afford KOA more than all these opportunities to show cause. Section 312 (b) is construed to require a hearing in which the licensee whose interests may be affected is entitled to intervene as a formal party. Such a construction appears to me to disregard the structure and language of the legislative scheme. Congress might have been explicit and provided in § 312 (b) that every licensee whose interests may be affected by Commission action shall be entitled to a hearing as an intervenor in the proceeding. As has been noted, the draftsmen of the Communications Act of 1934 knew how to use apt words when they wished to afford parties before the Commission the right of "hearing." Section 309 (a) requires the Commission to afford an applicant for a license a "hearing," not notice and an opportunity to show cause, before the application can be denied. Section 312 (a) gives a licensee a "hearing," not notice and an opportunity to show cause, before its license can be revoked. Section 303 (f) provides that the Commission cannot change the frequency, authorized power, or times of operation of a licensee unless it affords such licensee a "public hearing," not merely notice and an opportunity to show cause. But, for rea-

sons which it deemed sufficient, Congress did not choose to make this technical requirement of a "hearing" in specifying the procedure for. the protection of licensees who might be affected by Commission action. Congress may well have desired to avoid the litigious waste so abundantly established by the voluminous cases to which the claim of intervention in courts has given rise. The requirement of notice and an opportunity to show cause is not the equivalent of the requirement of a "hearing." By imposing this requirement for the adequate protection of substantial interests, Congress charged the Commission with the duty of devising appropriate procedure which would "best conduce to the proper dispatch of business and to the ends of justice." § 4 (j). The Commission's response was §§ 1.102 and 1.195 of its Rules.

Can it seriously be claimed that the Commission acted beyond its authority in providing that before a licensee can intervene in another proceeding he must indicate some solid ground by setting forth "the facts on which the petitioner bases his claim that his intervention will be in the public interest"? Otherwise anyone who asserts generally that the grant of another's application will affect his license may become a party to a proceeding before the Commission and may, to the extent to which a party can shape and distort the direction of a proceeding, gain all the opportunities that a party has to affect a litigation although he has not made even a preliminary showing that his intervention will be in the public interest. I cannot read the requirement for "reasonable opportunity to show cause why such an order of modification should not issue" as a denial to the Commission of power to make such a reasonable rule for sifting the responsibility of potential intervenors. And if the Commission's rule for intervention was within its discretionary authority in formulating appropriate rules of procedure for the conduct of its proceedings, it is equally clear that the Commission, in the

circumstances of this particular case, was justified in finding that KOA made no substantial claim that the grant of the WHDH application would impair KOA's economic interests or entail a substantial loss of listeners or make any appreciable inroads upon any areas served by KOA or otherwise substantially affect its interest or that of the public.

To deny to the Commission the right to require a preliminary showing, such as was found wanting here, before admitting a petitioner to the full rights of a party litigant is to fasten upon the Commission's administrative process the technical requirements evolved by courts for the adjudication of controversies over private interests. See *Federal Communications Comm'n* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 142-44. It is to assume that the modes familiar to courts for the protection of substantial interests are the only permissible modes, regardless of the nature of the subject matter and the tribunals charged with administration of the law. This is to read the discretion given to the Federal Communications Commission to fashion a procedure relevant to the interests for the adjustment of which the Commission was established through the distorting spectacles of what has been found appropriate for courts. We must assume that an agency which Congress has trusted is worthy of the trust. And especially when sitting in judgment upon procedure devised by the Commission for the fair protection of both public and private interests, we must view what the Commission has done with a generous and not a jealous eye.

Mr. Justice Douglas, dissenting:

While I am in substantial agreement with the views expressed by Mr. Justice Frankfurter, there are a few words I desire to add on one phase of the case.

I agree with the Court that if, as we held in the *Sanders* case (309 U. S. 470), a person financially injured by

the grant of a license has a standing to appeal, so does one whose station will suffer from electrical interference if the license is issued. I expressed my doubts, however, in *Scripps-Howard Radio* v. *Federal Communications Commission*, 316 U. S. 4, 20–21, whether Congress endowed private litigants with the power to vindicate the public interest when it gave the right to appeal under § 402 (b) to a person "aggrieved or whose interests are adversely affected" by a decision of the Commission. I also expressed my concern in that case with the constitutionality of a statutory scheme which allowed one who showed no invasion of a private right to call on the courts to review an order of the Commission. See *Muskrat* v. *United States*, 219 U. S. 346. But if we accept as constitutionally valid a system of judicial review invoked by a private person who has no individual substantive right to protect but who has standing only as a representative of the public interest,[1] then I think we must be exceedingly scrupulous to see to it that his interest in the matter is substantial and immediate. Otherwise we will not only permit the administrative process to be clogged by judicial review; we will most assuredly run afoul of the constitutional requirement of case or controversy. *Federal Radio Commission* v. *General Electric Co.*, 281 U. S. 464.

Any actual controversy which may now be present in this case is between KOA and the Commission. Any controversy which existed between WHDH and the Commission has come to an end. *United States* v. *Alaska S. S. Co.*, 253 U. S. 113, 116. The interest, if any, of the appellant KOA is the interest of a private person and accordingly must be measured in terms of private injury.

---

[1] Referred to as a sort of King's proctor by Edgerton, J., in *Colorado Radio Corp.* v. *Federal Communications Commission*, 73 App. D. C. 225, 118 F. 2d 24, 28; and as "private Attorney Generals" by Frank, J., in *Associated Industries* v. *Ickes*, 134 F. 2d 694.

That interest must be substantial and immediate if the standard of the statute and if the constitutional requirements of case or controversy, as interpreted by the *Sanders* and the *Scripps-Howard* cases, are to be satisfied. It is necessary to show in effect that KOA has sustained or is about to sustain some direct and substantial injury (see *Massachusetts* v. *Mellon,* 262 U. S. 447, 488)— an injury which for the purpose of this case must result from electrical interference. The *Sanders* case and the *Scripps-Howard* case do not dispense with that requirement. They merely hold that an appellant has his case decided in light of the standards of the public interest, not by the criteria which give him a standing to appeal.

I do not understand that the opinion of the Court takes a contrary view. It only holds on this phase of the case that KOA made an adequate showing under § 402 (b). I disagree with that conclusion.