303 F.2d 766
 AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
WMRO, Inc., Intervenor.
AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee.
 No. 16264.
 No. 16528.
 United States Court of Appeals District of Columbia Circuit.
 Argued January 19, 1962.
 Decided April 5, 1962.
 
 Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for appellant.
 Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, Federal Communications Commission, and Daniel R. Ohlbaum, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.
 Messrs. William P. Bernton and E. Theodore Mallyck, Washington, D. C., entered appearances for intervenor in No. 16,264.
 Before WILBUR K. MILLER, Chief Judge, and DANAHER and BURGER, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 The appellant is a licensee of station WENR-FM, Class B, Channel 234 in Chicago. On November 4, 1960, the Commission authorized WMRO, Inc., intervenor herein, to operate an FM station in Aurora, Illinois, on Class B, FM Channel 236. After the Commission denied appellant's "Petition for Reconsideration" for reasons set forth at length in its Memorandum Opinion and Order[1] of February 17, 1961, ABC noted its appeal in our case No. 16,264.
 
 
 2
 Partial reconsideration of that Memorandum Opinion and Order was then sought by WMRO to the end that the Commission set forth an additional ground for its ruling. WMRO in its opposition to ABC's petition for reconsideration had urged in part that the interference of which WENR complained affected only "5,316 persons," equivalent to about 1/10th of 1 per cent of the more than 5 million persons within the 1 mv/m contour in the area served by WENR. The Commission by its Memorandum Opinion and Order of July 10, 1961 agreed. It was found that the loss in population served by WENR "is obviously insignificant" in terms of that station's total service and did not result in a modification of the WENR license. When the intervenor's petition for partial reconsideration was thereupon granted, ABC noted its further appeal in our case No. 16,528. We have consolidated the appeals.
 
 
 3
 ABC would have us say that the grant to WMRO modified its license and violated its KOA rights.[2] Thus it is claimed that the Commission erred in failing to order a public hearing said to be required by section 316 of the Act.[3] However, ABC argues, in effect, that it is entitled to be free from interference within its 1 mv/m contour, no matter how slight the interference. "Either a license is or it isn't modified by a given grant — depending on whether interference occurs within the contour to which a given station is normally protected," ABC tells us on brief.
 
 
 4
 The Commission argues on the other hand that its rules applicable to frequency modulation service are not subject to the construction for which ABC contends. In the first place, section 3.204(a) of the Commission's FM rules provides that the "service area of a Class B station will not be protected beyond the 1 mv/m contour." ABC's license to operate WENR incorporated the Commission's rules within the KOA doctrine and thus included the importantly detailed provisions of section 3.313(c) of the FM rules. That section provides in part that a Class B facility may be authorized in a nearby city, on a channel 400 kc removed, in order to provide an equitable and efficient distribution of facilities notwithstanding some possible interference within the 1 mv/m contour of another FM station, it is argued. Accordingly, ABC was not entitled to an interference-free service area. Moreover such interference as it here would receive would be insignificant, and not sufficient to amount to a modification of its license. Thus the case did not present an issue turning upon section 316 rights. The Commission deemed the parties to be in substantial agreement as to the facts which, the Commission said, "form the basis of the controversy herein."
 
 
 5
 On July 27, 1960 the Commission granted an application filed by the partnership of Cofey and Oswalt for a permit to construct a new FM station in Aurora, Illinois, on Class B Channel 300. The Commission as a result of rule-making proceedings during the 1940s had allocated in the 88-108 megacycle portion of the spectrum 100 numbered channels for FM broadcasting. According to the table appearing in 12 F.R. 4027 (1947),[4] Channel 300 was the highest assigned for use by Class B stations and was to operate on a frequency of 107.9 mc. The Class B Channel 300 station, WMRO, would have rendered its principal service to Aurora from a transmitter site some 36 miles distant from that of WENR in Chicago. It is not shown that operation on Channel 300 would have caused objectionable interference to any other FM licensee, and the grant seems not to have been contested by any objector.
 
 
 6
 By application dated September 10, 1960, Cofey and Oswalt requested a modification of the outstanding construction permit for Station WMRO to permit operation on FM Channel 236 with a frequency of 95.1 mc. The engineering report accompanying the application showed that the proposed modification would result "in a negligible amount of objectionable interference to WENR-FM, Chicago, Ill. operating on Channel 234 (94.7 mc/s) and to WDHF, Chicago, Ill.[5] operating on Channel 238 (95.5 mc/s)." Exhibits readily disclosed the interference areas. The report's "allocation considerations" revealed precisely the extent of the interference areas as related to the service areas of the two named Chicago stations and the affected population ratios.
 
 
 7
 On November 8, 1960, the Commission's Broadcast Bureau announced that on November 4, 1960 the WMRO application for modification of its construction permit to operate on Channel 236 had been granted. Some two weeks later, ABC filed its petition for reconsideration. It alleged that the grant "without first affording ABC an opportunity to be heard contravenes the provisions of 47 U.S.C. § 316 and the KOA doctrine (319 U.S. 239 [63 S.Ct. 1035, 87 L.Ed. 1374])." Its supporting engineering statement reflected that after calculations, "WENR-FM is in agreement with the population and area figures with regard to interference caused WENR-FM as set out in the Aurora application * * *." The Commission thus could understand at a glance that of 2,079 square miles within the 1 mv/m contour of WENR, only 30 square miles would receive interference from the proposed operation by WMRO. Likewise, of 5,215,983 persons within the same area, only 5,361 persons would be affected.
 
 
 8
 The Commission treated the loss in population served by WENR as "obviously insignificant" — de minimis — in terms of WENR's total service. The loss area was seen to be 30 miles west of Chicago and about 5 miles east of Aurora. The same number of persons and that very area, the Commission concluded, would receive service from WMRO. "We believe it reasonable to conclude that the needs of the population residing therein are more nearly identified with Aurora than with Chicago." In the respects noted, WMRO's service, in short, would be in substitution of that previously provided by WENR.
 
 
 9
 So, discussing only the first ground of the ABC section 405 petition, the Commission explained in its July Memorandum and Order that its November 4, 1960 decision to make the WMRO grant was "based upon the theory" that it retains a "discretion" under its FM rules which it had "properly exercised." We may observe that ABC at that time was not in the case. It had not been given the section 316 notice "in writing of the proposed action and the grounds and reasons therefor." The Commission explained, furthermore, ABC had no normally protected contour of 1 mv/m, despite its contrary understanding. Thus, the Commission concluded, ABC's license had not been modified "within the meaning of Section 316 or the KOA decision."[6] The unusual result was reached without a hearing on the WMRO application in the first place and without a hearing thereafter on WENR's petition under section 405. The Commission rested on the "facts" as to interference as disclosed by the pleadings.[7]
 
 
 10
 As it did so, however, the Commission completely overlooked the second ground of WENR's petition. Neither the February or the July Memorandum and Order makes any reference whatever to WENR's "public interest" contention. WENR had pointed out that if Aurora had had no FM channel, the "public interest" might justify condoning some interference by a new facility. But Aurora already had the Class A grant on Channel 240 when the Commission made the public interest determination [in July 1960] that a further Class B grant should be made to WMRO on Channel 300. ABC alleged accordingly: "No compelling reason is disclosed by the instant application why WMRO-FM should be allowed to shift to a different Class B channel, where as a result of such shift objectionable adjacent channel interference will be caused to two existing Chicago FM operations — to Station WENR-FM on Channel 234 and to Station WDHF on Channel 238."[8]
 
 
 11
 If public interest considerations had been set forth and supported in the record, we would find it difficult on the previously stated "facts" taken by themselves, to disagree with the Commission's conclusion that the claimed "interference" might seem lacking in substantiality. But when the allegations as to modification by interference are coupled with the allegations as to the completely unexplored reasons for and the basis of the transfer from Channel 300 to Channel 236, a substantial public interest issue emerges. There should have been a hearing.[9]
 
 
 12
 As we read the Commission's FM Rule 3.204,[10] WENR, as a Class B station, is entitled normally to protection for its service area up to its 1 mv/m contour, subject to FM Rule 3.313(c).[11] The latter section provides that stations "may be authorized to operate in nearby cities with a frequency separation of not less than 400 kc where necessary in order to provide an equitable and efficient distribution of facilities." We agree with the Commission that both sections should be read together. But if in taking account of section 307 requirements, it shall be made to appear that the existing licensee shall be required to accept some interference, it is entitled to a showing as to the circumstances justifying the modification. If an adequate record demonstrates the need, the Commission's order will be sustained.[12]
 
 
 13
 The Commission insists that its FM rules[13] are sui generis, so to speak. It says it has "reserved for itself the power or discretion to determine in each case whether a particular grant is necessary to provide an equitable and efficient distribution of facilities. * * * notwithstanding resulting interference to existing stations in their 1 mv/m contours." (Emphasis added.) Perhaps so, but the rule does not so read. Its Memorandum and Order further recites the Commission's determination "that a Class-B FM station is not entitled to unlimited [sic] protection within its 1 mv/m contour * * *." The test for exercising its power to permit interference to a Class B station, the Commission says, is one of "reasonableness."
 
 
 14
 Even granting the Commission the wide scope to which it is entitled in construing its own rules, we are not now dealing with the former section 312 which concerned the Court in Federal Communications Comm. v. WJR, 337 U. S. 265, 278, 279, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949). After that decision came down, Congress amended the Act. The present section 316 is the result. In our view Congress intended to protect the right to be heard[14] — not where a purported issue of no substance is presented, to be sure[15] — but certainly so (1) where no public interest criteria are found to justify an initial grant without hearing and to support the refusal of hearing to an objector as in the circumstances shown here; and (2) where the Commission's claimed "discretion" as to what constitutes modification is so broadly asserted as to read section 316 right out of the Act. We find nothing in the Commission's FM rules permitting the interpretation now asserted. Congress authorized the Commission to promulgate appropriate rules for the conduct of its business, to be sure, but it did not grant the Commission "the congressional power of repeal."[16]
 
 
 15
 We will shortly conclude. The Commission's Memorandum and Order noted that "in making [a `nearby cities'] assignment, the Commission would not act in an arbitrary or capricious manner." To support its exercise of discretion here, it noted that "WMRO-FM would provide the first Class-B assignment for Aurora." In its July 1961 Memorandum and Order, in slightly altered form, it recited "that the grant of WMRO's application provides Aurora with a second FM facility in contrast to the 15 commercial FM stations now licensed in Chicago." But all that was true when the Commission first authorized Class B Aurora service on Channel 300. We suggest such findings offer no support for the action here complained of.
 
 
 16
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 21 R.R. 467 (1961); and see 21 R.R. 472 (1961)
 
 
 [2]
 Federal Communications Comm. v. N. B. C., 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374 (1943). There is no question here as to appellant's "standing."
 
 
 [3]
 47 U.S.C.A. § 316(a), which provides in effect that no "order of modification shall become final" until a licensee shall have had an opportunity to show cause by public hearing, if requested, why the order of modification should not issue
 
 
 [4]
 At the same time certain channels were assigned for use by Class A stations in cities which are not the central city or cities of a metropolitan district. In July 1960, there was in operation in Aurora, Illinois, one low-powered Class A station which is in no way involved in these proceedings. And see 47 C.F.R. § 3.201 (1958)
 
 
 [5]
 Although the interference to WDHF would have affected 37 square miles of its total 1,886 square miles, and 14,100 persons of the total of 5,095,191 served by that station, WDHF did not seek reconsideration before the Commission and has not appeared in our proceedings
 
 
 [6]
 The Commission's "theory," carried to its logical conclusion, would seem to mean that no FM licensee could ever have section 316 rights against interference should the Commission in its "discretion" decide that there had been no "modification" of the outstanding license
 
 
 [7]
 In an AM interference case we thought the Commission had erroneously refused a section 312 hearing when the facts as to interference were discernible from the pleadings. Albertson v. Federal Communications Commission, 87 U.S.App.D.C. 39, 43, 182 F.2d 397, 401 (1950)
 
 
 [8]
 Since without explanation by either the applicant or the Commission, the grant as modified placed WMRO on Channel 236, the proportions of ABC's contention take on added significance, especially when we recall that on Channel 300, WMRO would have interfered with no licensee. At the same time, Aurora would have been receiving the same Class B service which the Commission now emphasizes
 
 
 [9]
 Harbenito Broadcasting Co. v. Federal Communications Comm., 94 U.S.App.D.C. 329, 332 n. 8, 218 F.2d 28, 31 n. 8 (1954); cf. American Broadcasting Co. v. Federal C. Comm., 89 U.S.App.D.C. 298, 306, 307, 191 F.2d 492, 499, 500 (1951)
 
 
 [10]
 47 C.F.R. § 3.204 (1958) provides that the service area of a Class B station "will not be protectedbeyond the 1 mv/m contour," with assignments to be made "in a manner to insure, insofar as possible, a maximum of service to all listeners * * *." (Emphasis added.)
 
 
 [11]
 Id. § 3.313(c) (Supp.1961)
 
 
 [12]
 We have so held in AM license cases. See, e. g., Interstate Broadcasting Company v. FCC, 105 U.S.App.D.C. 224, 265 F.2d 598 (1959). We are unable to perceive that Congress has excluded the modification of an FM license from the requirements of section 316
 
 
 [13]
 Where a standard radio station raised a substantial question as to the meaning of engineering regulations, no oral argument having been had, we devised a procedure for a "type" of hearing deemed appropriate to the circumstances presented. Hecksher v. Federal Communications Commission, 102 U.S.App.D.C. 350, 253 F.2d 872 (1958)
 
 
 [14]
 Albertson v. Federal Communications Commission, supra note 7: certainly ABC, already on Channel 234, was not bound to expect itmust accept a modification of its license. Compare Gerico Investment Co. v. Federal Communications Comm., 103 U.S.App.D.C. 141, 143, 255 F.2d 893, 895 (1958).
 
 
 [15]
 Interstate Broadcasting Company v. F. C. C., 108 U.S.App.D.C. 78, 80, 280 F.2d 626, 628 (1960), where the allegations were held insufficient; and see, where "substantiality" could be discerned, Interstate Broadcasting Company v. F. C. C., 109 U.S.App.D.C. 190, 285 F.2d 270 (1960); Hecksher v. Federal Communications Commission, supra note 13
 
 
 [16]
 Cf. Office Employes v. National Labor Relations Board, 353 U.S. 313, 320, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957)