TRANS–PACIFIC FREIGHT CONFER-
ENCE OF JAPAN, American Mail
Line, Ltd., et al., Petitioners,

v.

FEDERAL MARITIME BOARD, now
Federal Maritime Commission, and
United States of America, Respondents,
States Marine Lines, Inc., and Global
Bulk Transport Corporation,
Intervenors.

No. 16423.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 27, 1961.

Decided April 12, 1962.

Mr. Charles F. Warren, Washington, D. C., with whom Mr. Alexander D. Calhoun, Jr., San Francisco, Cal., was on the brief, for petitioners.

Mr. Robert E. Mitchell, Deputy Gen. Counsel, Federal Maritime Commission, with whom Messrs. James L. Pimper, Gen. Counsel, Federal Maritime Commission, and Richard A. Solomon, Atty., Dept. of Justice, were on the brief, for respondents. Mr. Edward Aptaker, Asst. Gen. Counsel, Federal Maritime Commission, also entered an appearance for respondent, Federal Maritime Commission. Mr. Irwin A. Seibel, Atty., Dept. of Justice, also entered an appearance for respondent, United States.

Mr. George F. Galland, Washington, D. C., with whom Mrs. Amy Scupi, Washington, D. C., was on the brief, for intervenors. Mr. Robert N. Kharasch, also entered an appearance for intervenors.

Before WILBUR K. MILLER, Chief Judge, and WASHINGTON and BASTIAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This case raises questions as to the authority of the Federal Maritime Board[1] to issue restraining orders against a regulated group, pending final determination of complaints made against it.

The order now before us on appeal directs petitioners, the Trans-Pacific Freight Conference of Japan and its members, to refrain from assessing fines against intervenors, States Marine Lines, Inc., and its affiliate, Global Bulk Transport Corporation, or taking any action to collect such fines, pending the final disposition of proceedings which intervenors instituted against the Conference before the Board.

The Conference is a group of steamship companies operating from Japan, Korea and Okinawa to Hawaii and the Pacific Coast ports of North America. Petitioners act in concert in the conduct of their business by authority of an agreement filed with and approved by the Federal Maritime Board pursuant to Section 15 of the Shipping Act of 1916, 46 U.S.C.A. § 814. So long as approved by the Board, such agreements are exempted from the antitrust laws. Petitioner's Section 15 agreement permits them to combine to fix tariff rates and trade practices, and sets out a code of business practices. It also contains a schedule of monetary penalties, payable to the Conference, for violating various provisions. As a means of enforcement, an amendment to the agreement provides for employment of a "neutral body," empowered to investigate the complaint of any member line and to impose a fine upon discovery of an infraction of the agreement. One of the offenses for which a fine may be imposed is the refusal of a Conference member to make its business records available to the neutral body on demand.

Intervenors are members of the Conference. On January 13, 1959, the accounting firm of Lowe, Bingham & Thomsons, which was acting as the "neutral body" under the Conference agree-

1. The Federal Maritime Board, which issued the order under review, has been succeeded by the Federal Maritime Commission. See Reorganization Plan No. 7 of 1961, 26 Fed.Reg. 7315. References to the Board in this opinion should, where appropriate in the context, be deemed to include the Commission.

ment, sought to examine the books of States Marine in Tokyo. Lowe-Bingham claimed that it was acting upon the complaint of a member line that intervenors had engaged in "malpractices" in connection with the 1958 movement of mandarin oranges from Japan. Although the Tokyo office of States Marine acquiesced in the request for examination, intervenors refused to give access to their New York records to Lowe-Bingham's designee in New York, the firm of Price, Waterhouse & Co.[2] For this refusal, Lowe-Bingham subsequently levied a fine against intervenors in the amount of $10,000, the maximum assessment authorized for a first offense under the Conference agreement. Approximately six months later, on February 22, 1961, Lowe-Bingham claimed that it had received a second complaint relative to alleged misbehavior of intervenors during the 1960 movement of mandarin oranges from Japan, and again demanded access to States Marine's business records. States Marine again refused and Lowe-Bingham assessed a fine in the amount of $15,000, the maximum for a second offense. After imposition of each of the fines, States Marine gave notice of withdrawal from the Conference, and filed a formal complaint with the Maritime Board. Both complaints prayed, *inter alia*, that the Conference be enjoined from using Lowe-Bingham as a neutral body, and requested interim relief. The complaints were consolidated, and hearings were held. During the pendency of the hearings, the Board entered an order directing that petitioners show cause why they should not be ordered to cease and desist *pendente lite* from taking action to collect the second fine and from using Lowe-Bingham as a neutral body, or why "such other order as may be deemed appropriate" should not issue. As provided for in the order, affidavits and memoranda of law were submitted and oral argument was heard. Thereafter, the Board

issued the cease and desist order here under review. After stating that intervenors (complainants before the Board) were threatened by Lowe-Bingham and the Conference with irreparable injury, the order in part provides:

"It is Ordered, that from the date of this order and until the Board issues a final order in this proceeding, respondents shall cease and desist: (1) from assessing or collecting any fines against complainants; and (2) taking any action to collect fines heretofore assessed against the complainants * * *."

■■■■ Respondents and intervenors contend that the Board's order is not final and consequently not reviewable under the Administrative Orders Review Act of 1950 (the Hobbs Act), 5 U.S.C.A. § 1031 et seq. But, as we said in the Isbrandtsen case—

"Whether or not the statutory requirements of finality are satisfied in any given case depends not upon the label affixed to its action by the administrative agency but rather upon a realistic appraisal of the consequences of such action. 'The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control.' Thus, administrative orders are ordinarily reviewable when 'they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.' Under this test, a final order need not necessarily be the very last order." (Footnotes omitted.) [3]

---

2. States Marine claimed that Lowe-Bingham was not qualified to act as a neutral body under the terms of the Conference agreement because of its relationship with Price, Waterhouse & Co., which also

acted as auditor for one of the Conference members.

3. Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 297, 211 F.2d 51, 55, cert.

Here, during the indefinite period of time which might elapse before the Board issued a "final" order, the Board sought to deny the Conference by the terms of the order the right to assess or collect any fines from intervenors. The issuance of the order was thus intended to deprive petitioners of the most important means of enforcement of the Conference agreement.[4] We believe that an order which so threatens, for an indefinite period of time, to undermine the very functioning of the Conference is "final" for purposes of the Review Act.[5]

This brings us to the question whether the Board has the power to maintain the status quo by the order now under appeal. The Board relies for its authority on Sections 22 and 15 of the Shipping Act, 46 U.S.C.A. §§ 821 and 814. When a sworn complaint has been filed, Section 22 gives the Board power to investigate it "in such manner and by such means, and [to] make such order as it deems proper," including an order for reparations to the complainant for the injury caused by the violation of the Act.[6] Section 22 must be read in conjunction with Section 23, which provides that orders of the Board relating to any violation of the Act "shall be made only after full hearing · * * *." We need not decide here whether the "full hearing" contemplated by the statute was held in this case. We think it clear, however, from both the wording and context of Section 22, that the "order" which the Board may issue under that section is one which must be premised upon a finding of violation of the Act. But no such finding was made by the Board. On the contrary, the only justification advanced for the Board's order was a finding of "irreparable injury."

Nor does Section 15 support the Board's order.[7] That section provides

denied sub nom. Japan-Atlantic & Gulf Conference v. United States, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954).

4. The Board's order is, of course, a type of injunction. In apparent recognition of the fact that injunctive orders are "final" in the sense that they dispose of the rights of the parties for a period of time, 28 U.S.C. § 1292 (1958), has long provided that the courts of appeals have jurisdiction of interlocutory orders of the district courts granting or refusing injunctions.

5. The Hobbs Act gives us exclusive jurisdiction "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such final orders of the Federal Maritime Board as "are now subject to judicial review" pursuant to Section 31 of the Shipping Act, 46 U.S.C.A. § 830. Section 31 in turn is based on the procedures available for suspension of orders of the Interstate Commerce Commission under the Urgent Deficiencies Act of 1913, as amended and codified, 28 U.S.C. §§ 1336, 2321–2325 (1958). However, neither the cited statutes nor the decisions interpreting them appear to be of direct aid in solving the problem of finality presented by the instant case.

6. 46 U.S.C.A. § 821 (Section 22 of the Shipping Act) provides:
"Any person may file with the Federal Maritime Board a sworn complaint setting forth any violation of this chapter by a common carrier by water, or other person subject to this chapter, and asking reparation for the injury, if any, caused thereby. The Board shall furnish a copy of the complaint to such carrier or other person, who shall, within a reasonable time specified by the Board, satisfy the complaint or answer it in writing. If the complaint is not satisfied the Board shall, except as otherwise provided in this chapter, investigate it in such manner and by such means, and make such order as it deems proper. The Board, if the complaint is filed within two years after the cause of action accrued, may direct the payment, on or before a day named, of full reparation to the complainant for the injury caused by such violation.
"The Board, upon its own motion, may in like manner and, except as to orders for the payment of money, with the same powers, investigate any violation of this chapter."

7. 46 U.S.C.A. § 814 (Section 15 of the Shipping Act) provides:
"Every common carrier by water, or other person subject to this chapter, shall file immediately with the Federal Maritime Board a true copy * * * of every agreement, with another such carrier * * * or modification or cancellation thereof * * * fixing or regulating transportation rates or fares

for the submission to the Board of an "agreement" between carriers or a "modification" of such an agreement. But the action here enjoined (the assessment and collection of fines) does not appear in itself to be an "agreement" or "modification" of an agreement. If it were, Section 15 empowers the Board to disapprove, cancel, or modify the agreement or modification. But nothing is said about enjoining it pending a "final" order. Moreover, the Board may disapprove or modify any agreement that it finds to be "unjustly discriminatory or unfair" (as between certain parties or ports) or that it finds to operate to the detriment of the commerce of the United States, or to be in violation of the Act. But the Board made no findings of this sort and relied, as we have pointed out, only on a conclusion that complainants were threatened with irreparable injury. Thus, neither Section 15 nor Section 22 supports the order as issued by the Board.[8]

Our conclusion is reinforced by the administrative interpretation placed on the Act by the Board. The Shipping Act was passed in 1916. But not until as recently as 1960 has the Board or its predecessors even asserted that it possessed the kind of interim injunctive powers asserted in this case.[9] Pacific

Far East Line, Inc. v. Pacific Westbound Conference, —— F.M.B. —— (Docket No. 915, 1960). In fact, the Board on several occasions expressly disclaimed such authority. See Isbrandtsen Co. v. United States, 81 F.Supp. 544, 547 (S.D. N.Y.1948), appeal dismissed sub nom. A/S J. Ludwig Mowinckels Rederi v. Isbrandtsen Co., 336 U.S. 941, 69 S.Ct. 813, 93 L.Ed. 1099 (1949); West India Fruit & Steamship Co. v. Seatrain Lines, 170 F.2d 775, 776 (2d Cir. 1948). And in the last session of Congress the same Board which issued the order now before us represented to the House Merchant Marine and Fisheries Committee that—

"1. The Board should be given the power to enter cease and desist orders of an interlocutory nature prior to the completion of full evidentiary hearings. * * *

" * * * the Board should have the power to maintain or restore the status quo upon a prima facie showing of irreparable damage, substantial injury to the public interest, or little likelihood of success on the merits. In this respect, the Board would in general be acting in a fashion similar to that of a court of equity in the disposition of applications for interlocutory injunction." [10]

* * * or in any manner providing for an exclusive, preferential, or cooperative working arrangement. * * *

"The Board may by order disapprove, cancel, or modify any agreement, or any modification or cancellation thereof, whether or not previously approved by it, that it finds to be unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, or between exporters from the United States and their foreign competitors or to operate to the detriment of the commerce of the United States, or to be in violation of this chapter, and shall approve all other agreements, modifications, or cancellations.

" * * * It shall be unlawful to carry out any agreement or any portion thereof disapproved by the Board.

"All agreements, modifications, or cancellations made after the organization of the Board shall be lawful only when and as long as approved by the Board * * *."

8. In Pacific Coast European Conference, 5 F.M.B. 65 (1956), the Board asserted the authority to issue a cease and desist order prohibiting the parties from carrying out an *unapproved* agreement. We need not express a view as to whether such an order is within the Board's authority. But we do note that different considerations might well be involved in such a case. Cf. Isbrandtsen Co. v. United States, supra, 93 U.S.App.D.C. at 299, 211 F.2d at 57 (action of the Board in issuing order allowing dual rate system agreement to go into effect prior to Board approval held contrary to specific requirements of Section 15 of the Shipping Act).

9. Compare note 8, supra.

10. Dept. of Commerce letter submitted to House Merchant Marine and Fisheries Committee March 20, 1961, H.R.Rep. No. 498, 87th Cong., 1st Sess., 14, 22.

Congress has repeatedly demonstrated that it knows how to make an express delegation of authority to issue interim cease and desist orders when it so desires. See, e. g., 15 U.S.C.A. § 45(b) (Federal Trade Commission); 16 U.S.C.A. § 820 (Federal Power Commission); 29 U.S.C.A. § 160(c) (National Labor Relations Board); see also Shipping Act § 17, 46 U.S.C.A. § 816. Frequently, Congress has expressly provided that an agency can obtain this form of relief by applying to an appropriate District Court. See, e. g., 15 U.S.C.A. §§ 53(a), 68e(b), 69g(b), 70f (Federal Trade Commission); 49 U.S.C.A. §§ 5(8), 43 (Interstate Commerce Commission).

■ The power which the Board now claims is in many ways a drastic one, and in fact more akin to judicial injunctive power than the power which Congress has given some agencies to issue cease and desist orders against conduct deemed in violation of law. The order here is not a directive to comply with existing law or an existing Board regulation. On the contrary, it seeks to prohibit one party (in what is at this stage essentially a private dispute) from enforcing an agreement, previously approved by the Board, made with another private party. But the Board is not a court, and cannot rely for its action on the powers of a court of equity. On the contrary, the law is settled that an administrative agency can exercise only those powers conferred on it by Congress. See, e. g., Civil Aeronautics Board v. Delta Air Lines, 367 U.S. 316, 322, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); United States v. Seatrain Lines, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396 (1947); Alaska Airlines v. Civil Aeronautics Board, 103 U.S.App.D.C. 225, 257 F.2d 229 (1958). We will not lightly assume that Congress has attempted to confer injunctive powers on this or any other administrative agency.

Our examination of the statute and the administrative interpretation of it does not support the Board's contention that Congress has granted it the authority it has here sought to exercise. The order must be set aside. Our decision is, of course, without prejudice to any proceeding which the agency or the intervenors may bring in a court of equity to seek injunctive relief against petitioners. With this possibility in mind, the entry of our judgment will be postponed for fifteen days.

Reversed.