**NATIONAL BANK OF NORTH AMERICA, Plaintiff,**

v.

**S. S. OCEANIC ONDINE, S. S. CHATHAM, S. S. OCEANIC VICTORY, and Resoloute Marine Associates, Ltd., Defendants.**

**Civ. A. No. 69-G-53.**

United States District Court,
S. D. Texas,
Galveston Division.

June 26, 1970.

Marvin Peterson and Benjamin R. Powell, McLeod, Powell, Alexander & Apffel, Galveston, Tex., for movants, the City of Galveston, the Board of Trustees of the Galveston Wharves, and the Galveston Wharves.

Edward W. Watson, Eastham, Watson, Dale & Forney, Galveston, Tex., for opponent, National Bank of North America.

Ed. Bluestein, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for opponent, Short Hills Shipping Corp.

Anthony J. P. Farris, U. S. Atty., and Jack Shepherd, Asst. U. S. Atty., Houston, Tex., for opponent, the United States.

NOEL, District Judge.

## MEMORANDUM AND ORDER:

While the S. S. Oceanic Ondine and the S. S. Chatham were in the custody of the United States Marshal after seizure and before delivery to the purchaser at the Marshal's sale, each ship was shifted four times from one pier to another within the Port of Galveston, Texas, at the direction of the harbormaster, but without the consent of the custodial court, the Marshal, the owners of the vessels, or the pre-custodial claimants. The City of Galveston, the Board of Trustees of the Galveston Wharves, and the Galveston Wharves have moved for the allowance of the costs incurred in shifting the vessels. The Wharves contend that the costs should be classified as preferential court costs to be paid before the claims of the secured creditors, because the shifts were authorized by city charter and ordinance provisions regulating the placement of vessels in the harbor at the expense of the owner.

The Wharves motion is opposed by the mortgagee, National Bank of North America, and the purchaser at the Marshal's sale, the Short Hills Shipping Corporation, who argue that the charges should not be paid preferentially ahead of their claims because: (1) the dictates of "equity and good conscience" restrain the Court from giving preference to the movant's claims; and (2) the charter and ordinance provisions relied upon by the Wharves are unenforceable or invalid because: (a) they were neither filed with the Federal Maritime Commission as required by the Shipping Act of 1916, as amended, *see*: 46 U.S.C. § 814; nor exempted from filing, *Id.* § 833a; and (b) the ordinances were revoked when the city amended its charter.

The movant's claims for preferential payment of the shifting charges is not well taken.

■ The Wharves are not entitled to a lien to secure payment for services rendered while the ships were "in custodia legis." However, in appropriate cases the court has the power to order that claims for services provided to ships in the court's custody be paid preferentially. New York Dock Co. v. S. S. Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927); Larsen v. New York Dock Co., 166 F.2d 687 (2nd Cir. 1948); Steamship Emilia, 1963 A.M.C. 1448 (Fed. Dist.Ct.S.D.N.Y.1963); G. Gilmore and C. Black, The Law of Admiralty, §§ 9–11 at 497–499 (1957). In *Poznan, supra,* Justice Stone, holding that wharfage

should be preferentially paid, enunciated the standards to be used in determining whether preferential payment would be appropriate:

> The most elementary notion of justice would seem to require that [claims for] services or property furnished * * * for the common benefit of those interested in a fund administered by the court should be paid from the fund as an 'expense of justice.'

> [These preferential payments] result from the self-imposed duty of the court * * * to require that expenses which have contributed to the preservation or creation of the fund in its custody shall be paid before a general distribution among those entitled to receive it. *Id.* at 121 of 274 U. S., at 484 of 47 S.Ct.

The Galveston municipal charter and ordinance provisions relied upon by the movants give the harbormaster discretion to move docked vessels to other harbor facilities at the vessel's expense. The harbormaster's discretion is not limited to emergency situations. The provisions in question enable him to order the relocation of docked vessels to facilitate the efficient use of the port.

■ In this case the Wharves have not satisfied their burden of proof. The evidence in the record strongly suggests that the shifts, although not made to discriminate against the Court, the Marshal, the owners of the vessels, or the pre-custodial claimants, were made solely for the benefit of the Wharves—not the ships, and I so find. Under these circumstances the Court does not believe it would be equitable to allow the shifting charges preference as court costs.

Moreover, even if the Wharves had sustained their burden of proving that the costs were equitably incurred, they would not prevail.

■ The ordinance and charter provisions relied upon by the Wharves are unenforceable. These provisions are agreements which Congress intended should be filed with and approved by the Federal Maritime Commission before be-

coming enforceable. 46 U.S.C. § 814 (as amended 1964); *c.f.*: Volkswagenwerk v. F.M.C., 390 U.S. 261, 273–276; 275 n. 23, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); Port of Boston Marine Terminal Ass'n v. Boston Shipping Ass'n, Inc., 420 F.2d 419 (1st Cir. 1970); Matson Navigation Co. v. F.M.C. 405 F.2d 796, 798–801 (9th Cir. 1968); Greater Baton Rouge Port Comm. v. United States, 287 F.2d 86 (5th Cir. 1961); Anglo Canadian Shipping Co. v. United States, 264 F.2d 405, 410–411 (9th Cir. 1969); River Plate and Brazil Conf. v. Pressed Steel Car Co., 227 F.2d 60, 63 (2nd Cir. 1955).

In *Volkswagenwerk, supra,* the Supreme Court reviewed the legislative history of § 814 and emphasized that Congress intended the Act's filing requirements to be interpreted broadly so that numerous agreements would be subjected to the scrutiny of the Federal Maritime Commission. The purpose of this expansive interpretation was to enable the Commission to protect the public from the adverse effects of unreasonably restrictive trade agreements. *Id.; see also,* Port of Boston Marine Terminal Ass'n v. Boston Shipping Ass'n, *supra,* Matson Navigation Co. v. F.M.C., *supra.*

The high court in *Volkswagenwerk* was not called upon to decide whether a city charter or ordinance provision would ever constitute an agreement for the purposes of § 814. This issue was not raised by counsel, and is one of first impression. The only authority the Court has found bearing on the issue is Greater Baton Rouge Port Comm. v. United States, *supra.* In that case the Court held a lease agreement, embodied in a state administrative order which required exclusive dealing, to be an agreement.

■ In light of the *Volkswagenwerk* decision interpreting the scope of § 814 direct case authority is not necessary to support this Court's decision that the Galveston municipal charter and ordinance provisions in question constitute an agreement for the purposes of § 814.

The Court reaches this conclusion for several reasons:

(1) The Supreme Court's broad construction of the registration provisions in the Shipping Act of 1916, *supra*, § 814; Volkswagenwerk v. F.M.C., *supra*; and its emphasis in *Volkswagenwerk* that Congress desired the Federal Maritime Commission to protect the public from the effects of restrictive or discriminatory competition;

(2) the fact that there is no showing in the record that it would unduly burden the Wharves to register the charter and ordinance provisions; and

(3) the fact that if a private wharf operator included provisions in his wharfage contract similar to those in the municipal provisions in question they would constitute part of a unilateral contract "fixing or regulating transportation rates or fares" and be subject to registration with the Federal Maritime Commission in order to be enforceable. 46 U.S.C. §§ 801, 814; *see for example*: Volkswagenwerk v. F.M.C., *supra*; Anglo Canadian Shipping Co. v. United States, *supra*.

In the light of the above, this Court will not construe the term "agreement" in § 814 narrowly. The Wharves should not be permitted to avoid registration and scrutiny of the Federal Maritime Commission solely because the questioned conditions of wharfage are cast as ordinances and charter provisions instead of conditions in a unilateral or bilateral contract of wharfage. Instead it seems reasonable to require that a local governmental unit operating wharfage facilities, traditionally owned by private institutions subject to the Shipping Act of 1916, be required to register all conditions of wharfage, otherwise within the scope of § 814, regardless of whether they are contained in wharfage contracts, tariffs or municipal charter or ordinance provisions.

Since the Galveston charter and ordinance provisions in question are equivalent to conditions in a contract regulating transportation rates, and are arguably susceptible to discriminatory application (compare the facts and agreement in *Volkswagenwerk* with the facts and provisions in question here), they may not be enforced unless approved by the Federal Maritime Commission as required by § 814 of the Shipping Act, *supra*.

No serious question concerning the issue whether the Galveston ordinance and charter provisions are exempt from registration under § 814 is raised here. Section 833a of the Shipping Act, *supra* (as amended 1966), empowers only the Federal Maritime Commission to exempt agreements from registration, but the record contains no evidence that the Commission exempted the municipal provisions in question.

This decision renders unnecessary a consideration of the opponents' revocation argument.

It is therefore ordered that the Wharves motion is denied.